UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| LISA KELLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2: 08-54-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF FORT THOMAS, KENTUCKY, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Plaintiffs' motion to alter or amend filed pursuant to Federal Rule of Civil Procedure 59(e). [Record No. 49] The Plaintiffs argue that this Court's January 8, 2009, Memorandum Opinion and Order (the "January 8th Opinion") [Record No. 48] was based on manifest errors of law. In response, the Defendants argue that the Plaintiffs' motion is without merit. [Record No. 51] For the reasons discussed below, the Court will deny the Plaintiffs' motion to alter or amend.

**I.   Background**

The facts relevant to this case were extensively discussed in the January 8th Opinion. *See Kelly v. City of Fort Thomas*, No. 2: 08-54, 2009 U.S. Dist. LEXIS 1146, \*3–7 (E.D. Ky. Jan. 8, 2009). In that opinion, the Court held that: (1) the Plan Ordinances challenged by the Plaintiffs are neither arbitrary nor capricious under the United States or Kentucky Constitutions, *id.* at \*10–19; (2) the Plan Ordinances are not void for vagueness under the United States or

-1-

Kentucky Constitutions, *id.* at *19–23; (3) the Plan Ordinances do not constitute special legislation in violation of Section 59 of the Kentucky Constitution, *id.* at *23–24; (4) Ordinance § 95.05 *et seq.*, is not preempted by state law, *id.* at *28–34; (5) Ordinance §§ 91.51 and 91.52 do not violate the Commerce Clause, *id.* at *34–38; (6) Ordinance §§ 91.51(b) and 91.99(h) do not create a criminal presumption not authorized by the Kentucky Legislature, *id.* at *38–39; and (7) the Mayor and City Council Members are entitled to qualified immunity against all state claims asserted against them in their individual capacities, *id.* *39–44.  Based on these conclusions, the Court granted partial summary judgment in favor of the Defendants.

In their Rule 59(e) motion, the Plaintiffs contend that "manifest errors of law occurred where Ordinance 95.05 was not declared preempted by state law, where the individual Defendants were granted immunity, and where the actions of the Fort Thomas City Officials were declared constitutional." [Record No. 49, pp. 1–2] In response, the Defendants argue that the Plaintiffs' motion merely re-argues points already made, and that their motion "is nothing more than a complaint that the Court should have decided the issues differently, without presenting this Court with any new or additional reason – be it legal or factual – to justify a different decision. [Record No. 51, p. 2]

**II.    Standard of Review**

The purpose of a Rule 59(e) motion is to allow the district court to make its own corrections, thus sparing the parties and appellate court the burden of unnecessary appellate proceedings. *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).  However, while Rule 59 allows for reconsideration of a court's judgment, it does not permit parties to effectively "re-

argue a case." *Howard*, 533 F.3d at 475 (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Rather, the moving party "must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citations omitted).[1]

Neither party has cited, nor has this Court found, a precise definition within this circuit for the meaning of "manifest error of law" in the context of a Rule 59(e) motion. However, definitions from other Circuits are persuasive. The Seventh Circuit defines "manifest error" as the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (also noting that "[a] 'manifest error' is not demonstrated by the disappointment of the losing party"). Similarly, the Northern District of Texas, which refers to "manifest error" as "clear error," explained that:

> [t]here is no precise definition in the law for what constitutes "clear error," though it's clear that any analysis of clear error should conform to a very exacting standard. District courts should have a clear conviction of error before finding that a . . . judgment was predicated on clear error. In essence, a judgment must be "dead wrong" to qualify as being clearly erroneous.

*H & A Land Corp. v. City of Kennedale*, No. 04:02-458, 2005 U.S. Dist. LEXIS 25797, *5 (N.D. Tex. Oct. 24, 2005) (internal citations and quotation marks omitted). Based on these definitions, to prevail on a Rule 59(e) motion based on "manifest error of law," the moving party must demonstrate that errors were made which were so egregious that an appellate court could not affirm the district court's judgment.

---

[1] Intervening changes in the controlling law is also an acceptable reason for granting a Rule 59(e) motion. *Combs v. Lambert*, No. 03: 07-27, 2007 U.S. Dist. LEXIS 36008, *3 (E.D. Ky. May 16, 2007) (citations omitted). However, this ground is not applicable here.

### III.     Analysis

The Plaintiffs argue that three of the Court's holdings in the January 8th Opinion (*i.e.*, that Ordinance § 95.05 was not preempted by state law, that the individual Defendants were entitled to qualified immunity, and that Defendants' actions were constitutional) are based on manifest errors of law. However, the Plaintiffs have not demonstrated that any holding is incorrect.

#### A.     Ordinance § 95.05

After explaining the standard of review for statutory construction under Kentucky law, this Court concluded:

> [f]acially, § 95.05 regulates the discharge of arrows at any target within the Fort Thomas city limits, which could include, but is not limited to, deer. In addition, §§ 95.30 – 32 regulate field dressing, not hunting. The Court is not inclined to give additional meaning to these ordinances when their language is unambiguous. Accordingly, the Court holds that § 95.05 *et seq.*, regulates the discharge of arrows, not hunting, which makes [determining whether a comprehensive scheme of legislation regulating hunting exists] unnecessary. The Plaintiffs have not cited, nor has this Court found, any Kentucky statute prohibiting a city from regulating the discharge of arrows within its city limits. Therefore, the Court holds that § 95.05 *et seq.*, is not preempted by state law, and will grant the Defendants' motion for summary judgment as to this issue.

*Kelly*, 2009 U.S. Dist. LEXIS 1146 at *34.

The Plaintiffs acknowledge that the Court identified the correct legal standard used in Kentucky for statutory construction and interpretation, but argue that "[d]espite the thorough recitation of controlling case law, the established precedent was not followed." [Record No. 49, p. 4] Plaintiffs then go on to re-argue the same argument the Court previously rejected in the January 8th Opinion: that "[t]he plain meaning of the Ordinance provides irrefutable evidence

of the intent of the Fort Thomas City Council" to regulate hunting. [*Id.* 4–6] The Court disagreed with this argument the first time it was made and no new legal or factual evidence has been presented to demonstrate that the Court's original holding is erroneous. Accordingly, the Court will deny the Plaintiffs' Rule 59(e) motion as to this issue.[2]

### B. Qualified Immunity

The issue of qualified immunity was thoroughly addressed in the January 8th Opinion. As the Court explained, "[o]nce a public official has shown *prima facie* that an act was performed within the scope of his or her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Kelly*, 2009 U.S. Dist. LEXIS 1146 at *42 (citations omitted). Finding no evidence suggesting that the Defendants acted in bad faith when enacting the Plan Ordinances, the Court held that the Defendants were entitled to qualified immunity against all state claims asserted against them in their individual capacities. *Id.* at *43–44.

The Plaintiffs argue that the holding regarding qualified immunity is a manifest error of law because the Defendants acted outside the scope of their authority by adopting the Plan Ordinances "where a comprehensive scheme of legislation already governs the subject matter." [Record No. 49, p. 2] This argument presupposes that the Court would reverse its previous holding and then find that Ordinance § 95.05 *et seq.*, is preempted by state law. As stated above, the Court will not do so. In addition, as explained in a separate opinion to be entered this date,

---

[2] Since Ordinance § 95.05 *et seq.*, is not a hunting regulation, the Plaintiffs' argument that the Ordinance is preempted by an existing comprehensive legislative scheme to regulate hunting in Kentucky continues to be moot.

the Court will modify the January 8th Opinion and will now grant the Defendants' motion for summary judgment regarding the issue of whether Ordinance § 91.51 is preempted by state law.

Even if Ordinance §§ 95.05 or 91.51 were preempted by state law, the fact that the Defendants voted in favor of these ordinances would not necessarily strip them of qualified immunity. As discussed in the January 8th Opinion, "officials are not liable for bad guesses in gray areas, and most government officials are not expected to engage in the kind of legal scholarship normally associated with law professors and academicians. Thus, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at *43 (citations and internal quotations omitted).

The Court found no evidence demonstrating that the Plan Ordinances were enacted in a plainly incompetent manner or that the Defendants knew they were violating the law when they voted for the Plan Ordinances. To the contrary, the facts establish that over a year of corroborative planning between KDFWR officials and the Defendants went into the design of the Plan Ordinances before they were enacted. *Id.* at *4–6. Thus, the Defendants are entitled to qualified immunity as to all state claims asserted against them in their individual capacities. *Id.* at *44 The Plaintiffs provide no new factual or legal arguments explaining why this holding was incorrect. Accordingly, the Court will deny the Plaintiffs' Rule 59(e) motion as to this issue.

### C. The Constitutionality of the Defendants' Actions

In their summary judgment response brief, the Plaintiffs argued that the Court should apply a strict scrutiny standard of review because the Plan Ordinances pose a "special danger" to the Plaintiffs and threatened a fundamental right: that is, the right to be free from risk of

serious bodily injury. [Record No. 29, p. 16] In support of their argument, the Plaintiffs relied upon the "state-created-danger theory" annunciated in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). In *Kallstrom*, three undercover police officers sued the City of Columbus under § 1983 after the City made their personal information discoverable to defense attorneys who then passed this information on to defendant gang members. *Kallstrom*, 136 F.3d at 1060. In analyzing the Plaintiffs' § 1983 claims, the Sixth Circuit explained that "[l]iability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.* at 1066 (citation omitted). However, the Sixth Circuit then added a significant caveat, explaining that:

> because many state activities have the potential to increase an individual's risk of harm, we require plaintiffs alleging a constitutional tort under § 1983 to show "special danger" in the absence of a special relationship between the state and either the victim or the private tortfeasor. The victim faces "special danger" where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large.

*Id.* (citations omitted).

The *Kallstrom* Court concluded that the City "either knew or clearly should have known that releasing the officers' addresses, phone numbers, and drivers licenses and the officers' families' names, addresses, and phone numbers to defense counsel . . . substantially increased the officers' and their families' vulnerability to private acts of vengeance." *Id.* at 1067. Thus, the Sixth Circuit held that the officers had demonstrated "special danger." *Id.*

In rejecting the Plaintiffs' assertion that *Kallstrom* was applicable to this case, the Court previously explained that,

> The present case is materially distinguishable from *Kallstrom*. At issue here are generally applicable ordinances, not government actions increasing the risk of harm specifically to the Plaintiffs. Even assuming, *arguendo*, that the Plan Ordinances may increase the risk that a Plaintiff will be exposed to private acts of violence,[3] the Plaintiffs could not prevail under the state-created-danger theory because there is no evidence that the Plan Ordinances subject the Plaintiffs to any "special danger." Thus, the state-created-danger theory of liability discussed in *Kallstrom* is inapplicable. . . . The Court rejects the Plaintiffs' contention that a genuine issue exists regarding whether the degree of intrusion in the instant case rises to the level where strict scrutiny review should be applied as was done in *Kallstrom*. The holding in *Kallstrom* should not be applied to this case, and therefore, the determination of whether the degree of intrusion rises to the level discussed in *Kallstrom* is irrelevant.

*Kelly*, 2009 U.S. Dist. LEXIS 1146, *13–14.

Despite the Court's discussion of *Kallstrom* and the explanation for why it is inapplicable to this case, the Plaintiffs either miss or ignore these points. The Plaintiffs argue in their Rule 59(e) motion that they

> believe that whether the present case reaches the degree in *Kallstrom* with a special danger posed to the Plaintiffs was a question of degree and therefore an issue of fact inappropriate for disposition at summary judgment. As Plaintiff Kelly testified[,] she believes that a special danger is created by the ordinance to her children who play in the large wooded area near her house. The public at large does not utilize this wooded area. Therefore, a special danger is created by the City to Plaintiff Kelly's children. . . . Plaintiff Sheffield also testified to a perceived special danger to him and his family. He testified that he commonly walked on weekday mornings during hunting hours. Given that Plaintiff Sheffield is retired, he is one of the few citizens in Fort Thomas walking during the morning hours on a workday. Therefore[,] given that he would be outside during hunting hours more often than the public at large, a greater possibility existed compared to other citizens that he may be injured if a hunting accident were to occur. Additionally, the city's records reflect an incident in which a deer had to be put down in the Southern Business District. This is [t]he area in which

---

[3] The Court is not convinced that being struck by an errant arrow or a wounded deer would constitute a "private act of violence." It is more likely that such an event would be considered either an accident or a negligent act. *Kelly*, 2009 U.S. Dist. LEXIS 1146 at *14, n.6.

> Plaintiff Sheffield walked, and therefore a special danger threatened Plaintiff Sheffield that did not threaten the public at large.

[Record No. 49, pp. 13–14]

Despite the Plaintiffs' perception that the Plan Ordinances put them in "special danger," they have not demonstrated "special danger" as explained in *Kallstrom*. Unlike the facts presented in *Kallstrom*, there is no evidence that the Defendants knew or clearly should have known that by enacting the Plan Ordinances they were creating or increasing the risk that Plaintiffs Kelly, Sheffield, and their families will be exposed to private acts of violence. Further, just because the Plaintiffs' and their families' activities may cause them to spend more time in or near areas where arrow discharge is permitted does not mean that the Defendants' actions place the Plaintiffs specifically at risk, as distinguished from a risk that affects the public at large. *See Kallstrom*, 136 F.3d at 1066. These are all arguments previously made by the Plaintiffs and rejected by the Court. As previously stated, Rule 59(e) motions are not intended to allow parties to merely re-argue their case. *See Howard*, 533 F.3d at 475. Accordingly, the Court will deny the Plaintiffs' Rule 59(e) motion as to this issue.

### IV.    Conclusion

For the reasons discussed above, it is **ORDERED** that the Plaintiffs' motion to amend or alter [Record No. 49] is **DENIED**.

This 23rd day of April, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge