UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| LISA KELLY, et al., | ) | |
| | ) | |
|    Plaintiffs, | ) | Civil Action No. 2: 08-54-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF FORT THOMAS, | ) | **MEMORANDUM OPINION** |
| KENTUCKY, et al., | ) | **AND ORDER** |
| | ) | |
|    Defendants. | ) | |

*** *** *** ***

The Plaintiffs' have moved the Court to enter a declaratory judgment regarding the preemption of Fort Thomas City Ordinance § 91.51. [Record No. 50] For the reasons discussed below, the Court will deny this motion. In addition, the Court will modify its January 8, 2009 Memorandum Opinion and Order (the "January 8th Opinion") [Record No. 48] and will now grant the Defendants' motion for summary judgment [Record No. 22] as to the issue of whether Ordinance § 91.51 is preempted by state law.

**I.     Background**

In the January 8th Opinion, the Court held that the regulatory language in 301 KAR 2:105 permitting the feeding of wildlife year-round within the curtilage of the home directly conflicted with Ordinance § 91.51, which prohibited deer feeding. *Kelly v. City of Fort Thomas*, No. 2: 08-54, 2009 U.S. Dist. LEXIS 1146, *25–28 (E.D. Ky. Jan. 8, 2009).

-1-

Therefore, the Court denied the Defendants' motion for summary judgment as to the issue of whether Ordinance § 91.51 is preempted by state law. *Id.* at 28. The Plaintiffs now move the Court to enter a declaratory judgment in their favor holding that Ordinance § 91.51 is "preempted and invalid in so much as it prohibits feeding of deer within the curtilage of the home." [Record No. 53, p. 2] In response, the Defendants argue that the:

> preemption doctrine depends on an analysis of whether *the legislature* intended for a city to be precluded from enacting ordinances on certain topics, an intention it demonstrates either by enacting statutory provisions that explicitly prohibit a city from enacting an ordinance on a certain topic or by enacting a statutory scheme that thoroughly occupies the topical field. The glaring absence of any reference to "administrative regulations" in KRS 82.082 plainly reflects that the legislature did not intend to delegate its preemptive authority to administrative agencies. Therefore, an administrative regulation, standing alone, simply cannot support a preemption argument.

[Record No. 52, p. 3] In reply, the Plaintiffs argue that Kentucky state courts "have repeatedly considered regulations in tandem with statutes when considering preemption without noting additional requirements."[1] [Record No. 53, p. 2]

## II.    Analysis

Based on the plain reading of 301 KAR 2:015 and Ordinance § 91.51, it is clear that their language directly conflicts on the issue of whether a person in Fort Thomas can feed deer within the curtilage of his or her home. Regulation 301 KAR 2:015 was promulgated

---

[1] The issue of whether KRS § 82.082 prohibits a municipality from enacting an ordinance which conflicts with an administrative regulation was not raised by the parties in earlier briefs.

by the Kentucky Department of Fish & Wildlife Resources[2] ("KDFWR") pursuant to KRS § 150.025, and became effective on December 7, 2006. The regulation provides that:

> (1) Wildlife may be fed year round in public areas not open to legal hunting or trapping, unless otherwise prohibited by an administrative regulation or municipal ordinance.
>
> (2) Wildlife may be fed year round within the curtilage of the home.[3]

301 KAR 2:015 § 2.

On December 3, 2007, the Defendants enacted Ordinance § 91.51 pursuant to the authority granted to municipalities by KRS § 82.082 This municipal ordinance provides that:

> (A) No person shall knowingly, purposely or intentionally feed deer, cause deer to be fed or provide food to deer in the city on any public or private property. This prohibition includes, but is not limited to, disbursement of food on the ground, at a feeding station, in a feeding device, or in a container of any form; providing a salt or mineral lick/block; or any other means which serves to provide feed to any deer in the city.

Ordinance § 91.51(a). Despite conflicting language, what remains unresolved is whether the Defendants could enact a valid ordinance pursuant to KRS § 82.082 if the ordinance would directly conflict, in part, with a preexisting administrative regulation. No Kentucky authority has been found which addresses this issue.

---

[2] KDFWR is an agency within the Kentucky Tourism, Arts and Heritage Cabinet. The regulation is listed under Title 301 of the Kentucky Administrative Regulations.

[3] This regulation defines "curtilage of the home" as "the area encompassing the grounds immediately surrounding any home or group of homes used in the daily activities of domestic life, and may or may not be enclosed by a fence or other barrier. . . ." 301 KAR 2:015 § 2.

### A. 301 KAR 2:015 Does Not Preempt Ordinance § 91.51.

Kentucky's Home Rule statute, KRS § 82.082, permits municipalities to act without specific statutory authorization from the General Assembly. *Lexington Fayette County Food & Bev. Ass'n LFCUG*, 131 S.W.3d 745, 749 (Ky. 2004). However, this wide grant of authority given to municipalities to govern their own affairs is limited to areas that are not in conflict with constitutional or statutory provisions. Specifically, the statute provides:

> (1) A city may exercise any power and perform any function within its boundaries . . . that is in furtherance of a public purpose of the city and *not in conflict with a constitutional provision or statute*.
>
> (2) A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes. . . .

KRS § 82.082 (emphasis added).

As the Defendants note, KRS § 82.082 specifically prohibits a municipality from enacting ordinances that conflict with constitutional or statutory provisions. However, KRS § 82.082 is silent regarding a municipality's authority to act in the face of a conflicting administrative regulation. The Defendants contend that the absence of a reference to administrative regulations in KRS § 82.082 subsection (1) or (2) demonstrates that the General Assembly only intended to restrict municipalities' authority to act when such action would conflict with constitutional or statutory provisions. [Record No. 52, p. 3] Essentially, the Defendants argue that an administrative regulation, standing alone, cannot preempt a conflicting municipal ordinance.

The Defendants' argument is persuasive in light of Kentucky's rules of statutory construction which are intended to ascertain and give effect to the intent of the General Assembly. *Peter Garret Gunsmith, Inc. v. City of Dayton*, 98 S.W.3d 517, 520 (Ky. App. 2002) (citation and quotations omitted). While a statute should be viewed as a whole and its spirit considered, the statute's language bears the greatest importance. *Id.* A statute may not be interpreted in a manner that conflicts with the stated language. *Id.* "Accordingly, *a court may not insert language* to arrive at a meaning different from that created by the stated language of a statute." *Id.* (citing *Beckham v. Bd. of Educ. of Jefferson County, Ky*, 873 S.W.2d 575, 577 (Ky. 1994)) (emphasis added). "Moreover, Kentucky statutes must be given a liberal construction, and the language used must be given its ordinary meaning except when the language used has a special meaning in the law; in such case, the technical meaning is appropriate." *Id.* (citing KRS §446.080(1) and (4)). Kentucky also follows the doctrine of *expressio unius est exclusio alterius*. *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 826 (Ky. App. 2008). Thus, in Kentucky, "[i]t is a primary rule of statutory construction that the enumeration of particular things excludes the idea of something else not mentioned." *Fiscal Court v. Brady*, 885 S.W.2d 681, 685 (Ky. 1994) (quoting *Smith v. Wedding*, 303 S.W.2d 322, 323 (Ky. App. 1957)).

After analyzing KRS § 82.082 in light of these rules, the Court concludes that the General Assembly did not intend for administrative regulations to preempt municipal ordinances. To hold otherwise would ignore the plain language of the statute and insert additional language that would materially alter the scope of authority delegated by the

General Assembly through the statute. The Plaintiffs have not cited any authority for the proposition that the General Assembly intended for KRS § 82.082 to read ". . . and not in conflict with a constitutional provision or statute *or administrative regulation*." This statute has been in effect for since June 15, 1980. Had the General Assembly wanted to included additional restrictions in the statute, it certainly could have done so. Finally, if the Court were to hold that the General Assembly implicitly intended for KRS § 82.082 to prohibit municipalities from enacting ordinances that directly conflict with administrative regulations, municipalities' authority to self-govern pursuant to KRS § 82.082 would be significantly impaired.[4]

### B. The Defendants Are Entitled to Summary Judgment on All Issues.

As previously mentioned, the Defendants' motion for summary judgment was denied in the January 8th Opinion on the issue of whether Ordinance § 91.51 was preempted by state law. However, based on the holding above, the Court will now alter its earlier Opinion and grant summary judgment in favor of the Defendants. In their reply brief, the Plaintiffs note that "[t]he Defendants have not filed a motion to reconsider, yet they apparently request the Court to reconsider its finding of preemption." [Record No. 53, p. 2] The fact that the Defendants have not filed a motion to reconsider does not prevent the Court from

---

[4] This holding does not alter the limitation of KRS § 82.082 which prohibits a municipality from enacting an ordinance that conflicts with statutes and regulations which in tandem make up a comprehensive scheme of legislation. As the Plaintiffs note, this is what occurred in both *Lexington Fayette County Food & Bev. Ass'n v. LFUCG*, 131 S.W.3d 745 (Ky. 2004) and *City of Louisville v. Michael A. Woods, Inc.*, 883 S.W.2d 881 (Ky. App. 1993). [Record No. 53, p. 2, n.3] Here, however, the Plaintiffs are not alleging that the Defendants were prohibited from enacting Ordinance § 91.51 because a comprehensive legislative scheme already exists in the area of wildlife feeding.

reconsidering and modifying the January 8th Opinion *sua sponte*. The Sixth Circuit has observed that, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders."[5] *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Since the January 8th Opinion was only a partial grant of summary judgment, no final judgment was entered, and the Court has the ability to reconsider and modify this opinion. For the reasons discussed herein, there is no genuine issue regarding whether Ordinance § 91.51 is preempted by state law. Accordingly, the Court will grant summary judgment in favor of the Defendants on this issue.

## IV.   Conclusion

For the reasons discussed above, it is hereby

**ORDERED** that the Plaintiffs' motion for declaratory judgment [Record No. 50] is **DENIED**. The Defendants' motion for summary judgment [Record No. 22] on the issue of whether Ordinance § 91.51 is preempted by state law is **GRANTED**. All issues having been resolved, a final and appealable judgment will be entered this date.

---

[5]   The grant of partial summary judgment under Rule 56 is not a judgment as defined in Rule 54(a). In certain circumstances the district court may direct entry of a final appealable judgment upon an express determination that there is no reason for delay and upon an express direction for the entry of judgment. Otherwise the summary judgment remains interlocutory until disposing of the remainder of the action.

*Franzen v. CSX Transp.*, No. 92-5404, 1992 U.S. App. LEXIS 33673, *6, n.3 (6th Cir. Dec. 18, 1992) (unpublished) (citing 6 James W. Moore, Jerome C. Wicker, *Moore's Federal Practice* § 54.40) (internal quotations and citations omitted) .

This 23rd day of April, 2009.

